IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MALVIN RANDY SCHAMP, et al.,

        Plaintiffs,

  Vs.                                No. 06-4051-SAC

ALLEN SHELTON, in his personal
capacity, et al.,

        Defendants.

MEMORANDUM AND ORDER

      The case comes before the court on the defendants' motion for

judgment on the pleadings (Dk. 24).  The plaintiffs appear *pro se* bringing this

action against James Fetters, the former county attorney of Smith County, Kansas;

Alan Shelton, the current county attorney of Smith County, Kansas; Tony Potter,

the current county attorney for Graham County, Kansas; and John Linneman, a

police officer with the City of Smith Center, Kansas.  The plaintiffs' amended

complaint consists of eleven counts alleging the violations of constitutional law

and state law in the investigation, arrest, and prosecution of the plaintiffs on

various criminal charges. (Dk. 8).  The defendants move for judgment on the

pleadings arguing *Younger* abstention, prosecutorial immunity, failure to allege the

violation of constitutional rights, and the discretionary denial of pendent

jurisdiction over the remaining state law claims.  The plaintiffs responded in

opposition, and the defendants filed a reply in support of their motion.  The

magistrate judge denied the plaintiffs' request for an extension of time to file

another response.  (Dk. 37).  Ignoring the order, the plaintiffs filed a second

response.  (Dk. 38).  The court shall disregard and not consider the plaintiffs'

second response (Dk. 38) as it was untimely filed and not filed with leave of the

court.

**STANDARDS FOR MOTION FOR JUDGMENT ON THE PLEADINGS**

A district court decides a Rule 12(c) motion for judgment on the

pleadings using the same standard that governs a Rule 12(b)(6) motion to dismiss.

*Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528-29 (10th Cir. 1992).  "Judgment

on the pleadings should not be granted 'unless the moving party has clearly

established that no material issue of fact remains to be resolved and the party is

entitled to judgment as a matter of law.'"  *Park University Enterprises, Inc. v.*

*American Casualty Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting *United*

*States v. Any & all Radio Station Transmission Equipment*, 207 F.3d 458, 462 (8th

Cir. 2000), *cert. denied*, 531 U.S. 1071 (2001).  As with a Rule 12(b)(6) motion to

dismiss, the district court may grant the motion  "only when it appears that the

plaintiff can prove no set of facts in support of the claims that would entitle the

plaintiff to relief." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256 (10th Cir. 2003) (quotations omitted).  In deciding the motion, the district court must accept as true all facts well-pleaded by the non-movant and must draw all reasonable inferences from those facts in favor of the same.  *Park University Enterprises*, 442 F.3d at 1244; *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir.), *cert. denied*, 525 U.S. 881 (1998). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983) (footnote omitted).  "[D]ocuments attached to pleadings are exhibits and are to be considered" in deciding the Rule 12(c) motion.  *Park University Enterprises*, 442 F.3d at 1244 (citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Even so, a pro se litigant is not exempt from following the same rules of procedure as any other litigant. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir.1992), *cert. denied*, 507 U.S. 940 (1993).  "At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v.*

3

*Bellmon*, 935 F.2d at 1110.  Nor is the court to "supply additional factual

allegations to round out a plaintiff's complaint."  *Whitney v. State of New Mexico*,

113 F.3d 1170, 1173-74 (10th Cir. 1997).

## PLAINTIFFS' AMENDED COMPLAINT

These are the plaintiffs' allegations with some supplementation and

explanation developed from exhibits attached and referenced to the plaintiffs'

complaint.  This summary should not be construed as findings of fact but as an

attempt to place a factual context around the plaintiffs' broad and conclusory civil

rights claims.  As alleged, there are a number of encounters between the plaintiffs

and the defendants beginning with December 15, 2004, when the defendant John

Linneman, a police officer for Smith Center, Kansas, issued the plaintiff Malvin R.

Schamp a ticket for operating a vehicle with an expired tag.  On January 13, 2005,

Malvin Schamp learned that an arrest warrant had been issued for him even though

he had received earlier notice that the prosecution on this ticket had been

dismissed.[1]  The plaintiffs allege that James Fetters, filed a criminal complaint on

---

[1]According to the plaintiffs' exhibit two, the City Attorney for Smith Center,
Kansas, James Fetters, moved to dismiss the municipal case filed on this ticket
"due to the fact that it has been filed in another jurisdiction."  The magistrate judge
granted the motion and dismissed the case with prejudice.  The plaintiffs' exhibit
42, an investigation report taken on October 18, 2005, reflects the magistrate judge
mistakenly signed an arrest warrant on the municipal case after it had been
dismissed.

this ticket in Smith County District Court on January 19, 2005, after his term as

Smith County Attorney had expired.[2]  Pursuant to the summons, Malvin Schamp

appeared before Smith County District Court on February 8, 2005, but no

prosecuting attorney was allegedly present.  Malvin Schamp accordingly moved to

dismiss for lack of prosecution, and the district court denied this motion.

On September 28, 2005, Malvin Schamp was tried in Smith County

District Court and found guilty of operating a vehicle without current registration.

The court fined him $220.60 which he paid the same day.  The plaintiffs allege that

during this criminal trial, the district court judge required a witness, Randy

Schamp, to answer questions that violated his right to avoid self-incrimination, the

officer John Linneman perjured himself, and the County Attorney Alan Shelton

battered Randy Schamp while he was testifying.  The plaintiffs allege that Randy

Schamp received medical treatment for his injury.  The plaintiffs filed a complaint

with the Smith County Sheriff's Office against the County Attorney Shelton

alleging this battery.  The matter was investigated, and the plaintiffs gave

---

[2]The plaintiffs' exhibit three shows that James Fetters signed the criminal complaint on January 10, 2005.  The clerk's filing stamp on the complaint shows, however, it was not filed until January 19, 2005.  The plaintiffs' exhibits three and four show that James Fetters ended his term as Smith County Attorney on January 10, 2005, and that he ended his employment as the City Attorney of Smith Center on January 13, 2005.

statements that the County Attorney Shelton had either struck or had appeared to strike Randy Schamp.

On January 21, 2006, the plaintiff Randy Schamp was arrested pursuant to a warrant issued January 17, 2006, on charges that he committed perjury at the trial on September 28, 2005, in testifying that he owned the vehicle in question. From the exhibits submitted by the plaintiffs, it appears that Randy Schamp, Malvin Schamp, Dovie Schamp, Matt Schroeder and Bev Bowen-Eller were criminally charged later in a different case with conspiracy to commit the false reporting of a crime based on their complaints to the Smith County Sheriff's Office that the County Attorney Alan Shelton allegedly had battered Randy Schamp. Dovie Schamp was also charged with perjury with regard to her sworn statement about this incident. The plaintiffs' exhibits indicate these charges are pending in Smith County District Court. As to these charges and criminal proceedings, the plaintiffs allege various procedural irregularities as constitutional violations, including the notice of hearing dates, the requirement of an affidavit of indigency from Randy Schamp before appointing counsel, the appearance of Alan Shelton along with a special prosecutor at the government's table, and the appearance and appointment of a special prosecutor prior to the County Commissioners' approval of the appointment. The plaintiffs' complaint includes

the following blanket conspiracy allegation:  "On February 28, 2006, Mr. Shelton conspired with the District Judge, Magistrate Judge, Clerk of the Court, Court Reporter and Defense Attorney and stated they all got together and decided that our statements lacked Merit."  (Dk. 8, ¶ 51).

Based on these factual allegations, the plaintiffs claim the following:

**Count One:**  By their conspiracy and actions, the defendants violated the plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures.

**Count Two**:  "The Plaintiff was a witness compelled by the Court to testify against himself.  The Plaintiff was ordered by the Court and the County Attorney to answer the question after the Plaintiff did stand on his Fifth Amendment right." (Dk. 8, ¶ 62).

**Count Three**:  The plaintiffs claim a violation of the Sixth Amendment from the County Attorney not being present in court when the defendants were read their criminal charges and from the criminal complaint being filed by someone who was not the current County Attorney.

**Count Four**:  The plaintiffs cite only the Eighth Amendment.

**Count Five**:  The plaintiffs plead that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

**Count Six**:  The plaintiff Randy Schamp was required to post a bond in the amount of $1,500.00, though he had lived in the same town with his parents for most of his life.

**Count Seven**:  The County Attorney hired a special prosecutor without the authorization of the County Commissioners in violation of K.S.A. § 19-723.

**Count Eight**:  The plaintiffs learned of the charges and hearing dates from a newspaper before receipt of actual court notice in violation of K.S.A. § 60-307.

**Count Nine**:  The plaintiff Matt Schroeder claims the County Attorney who was a witness against the plaintiffs sat at the government's table "coaxing" the special prosecutor.

**Count Ten**:  The plaintiff was arrested and not taken before a judge within the time periods prescribed in K.S.A. 22-3206(2) and K.S.A. 22-2901.

**Count Eleven**:  The plaintiffs claim the defendants conspired with each other and with two judges and a court reporter in an "ex parte meeting" during which they decided that plaintiff's complaint against the County Attorney Shelton "was without merit" and after which they filed charges against all the plaintiffs.  The plaintiffs also allege that court records have been altered.

   The plaintiffs pray for monetary damages on each count and seek a grand jury "to investigate all the corruption within" Smith County, Kansas. and the

defendants, Tony A. Potter and James R. Fetters, in their individual capacities.

**OFFICIAL CAPACITY**

The plaintiffs sue all the defendants in their individual capacities and the defendants, Allen Shelton and John C. Linneman, in their official capacities also. The court construes the plaintiffs' cause of action as seeking relief under 42 U.S.C. § 1983. The Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State, its agencies and its officials acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 165-167, n. 14 (1985). Congress did not intend to abrogate the immunity of states under the Eleventh Amendment, and States, state agencies and state officials sued officially are not "persons" subject to suit under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-71 (1989). "'In Kansas, country district attorneys are officers of the state.'" *Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1215-16 (D. Kan. 1999) (quoting *Oltremari v. Kansas Social & Rehabilitation Service*, 871 F. Supp. 1331, 1347 (D. Kan. 1994)). Consequently, Allen Shelton in his official capacity as County Attorney for Smith County is not a person subject to suit under § 1983. *See Myers v. Supreme Court of State of Kansas*, 2006 WL 276399, at *5 (D. Kan. 2006); *see also Romero v. Boulder County DA's Office*, 87 Fed. Appx. 696, *698, 2004 WL 100523, **1 (10th Cir. 2004).

9

The plaintiffs' official capacity claim against Officer Linneman is really a claim against the City of Smith Center that employed him.  A local government is liable under 42 U.S.C. §  1983 for a constitutional violation caused by its employee acting pursuant to a municipal custom or policy.  *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997).  The plaintiffs have not alleged any municipal custom or policy in their complaint or any link between such a custom or policy and the claimed violation.  Nor is there any reason from the record to believe the defendants could allege such a custom or policy based on this isolated instance of issuing a traffic ticket against the plaintiffs and testifying at trial about the same.

Therefore, the court dismisses the claims against Allen Shelton and John C. Linneman in their official capacities.

## 42 U.S.C. §  1983 CLAIMS

The civil rights statute at 42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quotation omitted).  To avoid dismissal of their § 1983 claims at this stage, the plaintiff must allege: "'(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a

"person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.'" *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005) (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)).  References to various state laws and their requirements along with allegations that the same were violated will not state a viable § 1983 action.  *Stanko v. Maher*, 419 F.3d 1107, 1117 (10th Cir. 2005).  It is not sufficient for the plaintiffs to make conclusory allegations that fail to specify the constitutional rights violated or how the defendants violated those rights.

For a § 1983 conspiracy claim, the plaintiffs' complaint "must allege specific facts showing an agreement and concerted action among the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *see also Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir.) (a plaintiff must allege by direct or circumstantial evidence that defendants had meeting of minds or agreement), *cert. denied*, 543 U.S. 812 (2004).  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Tonkovich*, 159 F.3d at 533 (quotation omitted); *see also Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) (conclusory conspiracy allegations will not suffice for a constitutional claim), *cert. denied*, 543 U.S. 925 (2004).  Because the typical nature of a conspiracy often makes detailed pleadings difficult, *Brever v. Rockwell*

11

*Intern. Corp.*, 40 F.3d 1119, 1128 (10th Cir. 1994), courts are to read such claims liberally.  Dismissal remains appropriate, however, if the claims are based on nothing more than mere conclusory allegations lacking any supporting factual averments to show agreement and concerted action.

## PROSECUTORIAL IMMUNITY

The defendants, Shelton and Potter, are current county attorneys, and the defendant Fetters is a former county attorney.  The defendants argue the plaintiffs' claims arise from and are directly related to the defendants' performance of their duties in initiating and prosecuting criminal charges.  The defendants contend they enjoy absolute immunity from these claims.

The plaintiffs argue generally that prosecutors act outside the scope of their prosecutorial duties when they conspire with police officers, judges and others to deprive persons of their constitutional rights.  The plaintiffs allege the defendant Fetters "did in fact file a complaint on the 19th day of January after he was retired from the office of County Attorney."  (Dk. 33, ¶ 5).  The plaintiffs also argue that the defendant Potter became involved in the prosecution before the Smith County Commission approved his hiring and that he is presently prosecuting the plaintiffs with fabricated evidence and perjury.

A state prosecutor has absolute immunity for initiating, pursuing, and

presenting a criminal prosecution.  *Imbler v. Pachtman*, 424 U.S. 409 (1976).  This rule of immunity reaches a prosecutor's activities that are "intimately associated with the judicial phase of the criminal process."  *Id.* at 430.  "[T]he function test of *Imbler* recognizes[] the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  Absolute immunity covers a prosecutor's acts and functions carried out as an advocate for the State or as an officer of the court.  *Buckley*, 509 U.S. at 273.  It follows that "[a] prosecutor's administrative  duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."  *Buckley*, 509 U.S. at 273 (citation omitted).

        "Immunity attaches to the activity or function and is not dependent on the manner in which it is performed or the motive behind it."  *Pennington v. Penner*, 207 F. Supp. 2d 1225, 1237 (D. Kan. 2002) (citing *Parkinson v. Cozzoolino*, 238 F.3d 145, 150 (2nd Cir. 2001)); *see Shmueli v. City of New York*, 424 F.3d 231, 237 (2nd Cir. 2005) (a prosecutor's motives for carrying out advocacy functions "is irrelevant to the applicability of absolute immunity." (citation and quotation omitted)).  "For example, a defense of absolute immunity from a claim for damages must be upheld against a § 1983 claim that the

prosecutor commenced and continued a prosecution that was within his jurisdiction but did so for purposes of retaliation." *Schmueli*, 424 F.3d at 237 (citations omitted).

        If a defendant prosecutor enjoys absolute immunity from liability under 42 U.S.C. § 1983, then a § 1983 conspiracy claim is subject to dismissal as well. *Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1216 (D. Kan. 1999) (citing *Dennis v. Sparks*, 449 U.S. 24, 26-27 (1980) (absolute immunity for judicial acts is not precluded by a conspiracy charge); *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir.) (prosecutor still enjoys absolute immunity on a claim of conspiring with non-immune parties), *cert. denied*, 513 U.S. 832 (1994); *Norton v. Liddel*, 620 F.2d 1375, 1378-81 (prosecutor immune from conspiracy claim); *see also Miller v. Glanz,* 948 F.2d 1562, 1570 (10th Cir. 1991) (absolute immunity of a witness is not lost by an allegation of a conspiracy to commit perjury).  "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins*, 821 F.2d 133, 139 (2nd Cir. 1987); *see Shmueli*, 424 F.3d at 237-38 (the irrelevance of the prosecutor's motive to absolute immunity is "not affected by allegations that improperly motivated

14

prosecutions were commenced or continued pursuant to a conspiracy." (citations

omitted)); *Mowbray v. Cameron County, Texas*, 274 F.3d 269, 277 (5th Cir. 2001)

("As a matter of logic, a person may not be prosecuted for conspiring to commit an

act that he may perform with impunity." (internal quotations and citations

omitted)), *cert. denied*, 535 U.S. 1055 (2002). For these reasons, the plaintiffs'

argument that the defendants may not avail themselves of absolute immunity by

having conspired[3] with others is of no consequence.

### Allen Shelton

The defendant is the Smith County Attorney. The plaintiffs' rambling

and disjointed complaint does not plead with clarity what the defendant Shelton

allegedly did to be the subject of the different counts. Giving their complaint the

liberal construction afforded them for their *pro se* status, the court understands the

plaintiffs are claiming that defendant Shelton violated their constitutional rights in

seeking warrants for the arrest of Malvin Schamp on charges that had been

dismissed by the municipal court and for the arrest of Randy Schamp based on

fabricated evidence and perjured testimony of a police officer (Count One), in

---

[3]Moreover, the plaintiffs have failed to allege sufficient facts of a conspiracy
between the defendant county attorneys and others as to justify even addressing the
possibility of this exception to absolute immunity. *See Hunt v. Bennett*, 17 F.3d
1263, 1267 (10th Cir. 1994).

15

cross-examining Randy Schamp and compelling his testimony during the criminal prosecution of Malvin Schamp (Count Two), in pursuing criminal charges which had been dismissed earlier and later filed by someone who was not a current county attorney and in not being present later when the charges were read (Count Three), in prosecuting Malvin Schamp and advocating in favor of the fine that was imposed (Count Four), in advocating for an excessive bond for Randy Schamp (Counts Five and Six), in turning over a criminal prosecution to another county attorney before obtaining the approval of the County Commissioners (Count Seven), in communicating with newspapers about the charges and hearing dates before the defendants were provided judicial notice (Count Eight), in sitting at the government's table and "coaxing" the special prosecutor (Count Nine), in not taking Randy Schamp after his arrest before a judge within the statutorily required period (Count Ten), and in meeting *ex parte* with the judges, the court reporter, and the defense attorney for Malvin Schamp and deciding that the plaintiffs' complaint against Shelton lacked merit and in changing court records (Count Eleven).

In this case, the actions allegedly taken by the defendant Shelton giving rise to counts one through seven and ten are intimately associated with the Shelton's role in charging and prosecuting Malvin Schamp and in bringing criminal charges against Randy Schamp and, therefore, fall within this grant of

16

absolute immunity.  All of the alleged actions called for Shelton's exercise of

professional discretionary judgment in the performance of his prosecutorial

functions.  *See Kalina v. Fletcher*, 522 U.S. 118, 130 (1997).  A prosecutorial

function includes certain duties before "the initiation of a prosecution" as well as

prosecutor's conduct both inside and "apart from the courtroom."  *Imbler*, 424 U.S.

at 431, n. 33.  The defendant Shelton is entitled to absolute immunity on those

counts.[4]

---

[4]The plaintiffs have not alleged any claim against the defendant Shelton for making any false statements in any sworn statement.  A prosecutor is absolutely immune for preparing a criminal complaint and in seeking an arrest warrant. *Roberts v. Kling*, 144 F.3d 710 (10th Cir.1998), *cert. denied*, 525 U.S. 1139 (1999).  Allen Shelton is also immune from any claim that he failed to sufficiently investigate a complaint before filing charges.  *See Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991); *McCormick v. City of Lawrence, Kansas,* 253 F. Supp. 2d 1172, 1205 (D. Kan. 2003), *aff'd*, 99 Fed. Appx. 169 (10th Cir. Apr. 24, 2006) .  Allen Shelton, and for matter James Fetters, acted within the scope of their duties in initiating and pursuing a criminal prosecution by signing and having filed the criminal complaints. and information.  *See, e.g., Tucker v. Hollingsworth*, 210 F.3d 390, 2000 WL 346174, at *2 (10th Cir. 2000); *McCormick v. City of Lawrence,* 2004 WL 2270003 at *5 (D. Kan. 2004); *McCormick v. City of Lawrence*, 2003 WL 22466188 at *6 (D. Kan. 2003) (holding the defendant prosecutor was entitled to absolute immunity for signing a complaint), *aff'd*, 130 Fed. Appx. 987 (10th Cir. May 24, 2005).  Had the plaintiffs alleged such a claim and had Shelton or Fetters filed sworn statements in a witness role, the court would still grant the defendants' motion for qualified immunity from suit under § 1983, as the plaintiffs have not alleged any facts to show that the defendants' conduct was objectively unreasonable.

Counts eight, nine and eleven fail to assert a cognizable § 1983 claim against the defendant Shelton and the other named defendants.  Count eight asserts the plaintiffs learned first of the criminal charges against them and the related hearing dates from reading a local newspaper.  The plaintiffs claim the defendants' communications with the newspapers and this early publication of the newspaper notice violates K.S.A. § 60-307, which is the Kansas law on service by publication in civil cases.  *See* K.S.A. §§ 60-202 and 60-204.  The plaintiffs assert the defendants' deliberate breach of this state law violates their constitutional rights.  "Section 1983 does not, however, provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City and County of Denver, Colo.*, 854 F.2d 1206, 1209 (10th Cir.  1988) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  The plaintiffs have not alleged or shown that they have a federally protected right to receive notice of criminal charges and hearings before the newspaper publishes the same.  Count eight fails to state a cognizable § 1983 claim.

The plaintiff Matt Schroeder claims in count nine that he objected to the defendant Shelton who was a witness in the preliminary hearing against Schroeder sitting with prosecuting county attorney and "coaxing" the county attorney in violation of K.S.A. § 22-2902.  The plaintiffs' complaint fails to plead

18

how K.S.A. § 22-2902 on preliminary hearings was violated by Shelton's alleged

conduct.  Nor does the complaint otherwise state how a witness's alleged

"coaxing" of the prosecuting attorney deprived Schroeder of any right secured by

the Constitution and the laws of the United States.  Count nine does not assert a

cognizable claim under § 1983.

Count eleven suffers from similar deficiencies in legal theory and

pleading requirements.  The plaintiffs allege that the defendants Shelton and Potter

met with a court reporter and two judges and discussed the merit of the plaintiffs'

complaint and that the defendants and the others decided the plaintiffs' "complaint

was without merit."  The plaintiffs allege this meeting affected the investigation of

the assault and caused charges to be filed against the plaintiffs for making the

complaint.  These conclusory allegations fail to state a constitutional claim.  That

officials may have talked about the plaintiffs' complaint, agreed the plaintiffs were

wrong in complaining, and may have been individually influenced in some way by

what they heard and discussed does not constitute a conspiracy.  Such allegations

do not offer any evidence of a meeting of minds or agreement to violate the

plaintiffs' constitutional rights.  Neither the newspaper article appearing as

plaintiffs' exhibit 40 nor the videotape of the Smith County Commissioners'

meeting on February 27, 2006, constitute any evidence of these critical elements of

a conspiracy charge.

The plaintiffs further allege in count eleven that court records were altered and that specifically the defendant Shelton altered a journal entry. (Dk. 8, ¶ 24). The plaintiffs allege a discrepancy in the date of June 3, 2004, appearing on the district court's order of discovery that decided discovery motions filed nearly a year later. The filing date on the court's order is consistent with the filing dates on the motions, and the erroneous date appearing in the body of the order is plainly a clerical mistake that appears to have been committed by Malvin Schamp's counsel who signed the order as the counsel preparing it. (Plaintiff's Exhibit Eight). The plaintiffs also attach as exhibits 11 and 11A copies of the journal entry of conviction entered in *State of Kansas v. Malvin Randy Schamp*, No. 2005 TR 5, following the trial and sentence on September 28, 2005. Exhibit 11 bears a filing stamp with a handwritten date of "9-12-05" while Exhibit 11A is a copy of the same order and filing stamp but with the handwritten date modified by writing "10-12-05." The plaintiffs allege Shelton made this modification to the handwritten date on the filing stamp, but they fail to claim any violation of their constitutional rights from this apparent correction of the filing date. Count eleven does not state a cognizable claim under 42 U.S.C. § 1983.

Tony Potter

20

The defendant Potter is the County Attorney for Graham County, Kansas, who is prosecuting the plaintiffs in the later cases at the request of the defendant Shelton and the Smith County Commissioners. The plaintiffs' complaint lacks specificity on what the defendant Potter did to be a party to one or more of the counts. A § 1983 claim requires factual allegations of a defendant's personal involvement. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). With the exception of the counts noted specifically hereafter, the court dismisses the plaintiffs' complaint for failure to allege the defendant Potter's personal involvement. Liberally construed, the plaintiffs' complaint claims that the defendant Potter violated their constitutional rights in not being present at their first appearance hearing (count three), in prosecuting cases in Smith County without first obtaining the approval of the Smith County Commissioners (count seven), in communicating with local newspapers about charges and hearing dates before the plaintiffs received judicial notice of the same (count eight), in allowing a witness to sit at the government's table and "coax" him (count nine), and in meeting *ex parte* with the judges and others and deciding that the plaintiffs' complaint against Shelton lacked merit and in changing court records (count eleven).

The defendant Potter has absolute immunity in performing his duties

21

as a prosecutor that give rise to the plaintiffs' claims in counts three, seven and nine.  Counts eight and eleven fail to state cognizable § 1983 claims for the reasons stated earlier.  The defendant Potter's motion is granted.

James Fetters

The defendant James Fetters was the Smith County Attorney until noon on January 10, 2005.  The plaintiffs' amended complaint's only allegation against James Fetters is that he filed the criminal complaint against Malvin Schamp on January 19, 2005, when he was no longer a city attorney or county attorney.  Count three claims that the criminal case against the plaintiff Malvin Schamp was dismissed and "refiled by an Attorney who was not the County Attorney at the time of filing."  (Dk. 66).

As reflected on the face of the criminal complaint/information, the defendant James Fetters signed it on January 10, 2005, but the clerk of the court did not file it until January 19, 2005.  In their response to the defendants' motion, the plaintiffs tacitly concede that the defendant James Fetters is entitled to absolute immunity for whatever steps he took in initiating this prosecution before his term as county attorney ended on January 10, 2005.  The court finds that James Fetters is entitled to absolute immunity for signing the criminal complaint/information.

In their attempt to skirt this immunity bar, the plaintiffs limit their

22

claim against the defendant James Fetters to the allegation that he actually filed[5]

the complaint on January 19, 2005, when he was no longer a county attorney.  This

attempt is not persuasive.  James Fetters in his motion for dismissal filed with the

Municipal Court of Smith Center, Kansas, on January 10, 2005, asked that the case

against Malvin Schamp be dismissed with prejudice "due to the fact that it <u>has</u>

<u>been filed</u> in another jurisdiction."  (Plaintiffs' Ex. 2) (underlining added).  In other

words, while the City Attorney and County Attorney, Fetters had initiated this

prosecution in municipal court and had it dismissed for the announced reason that

it had been filed in the district court.  Consequently, as of January 10, 2005, the

defendant Fetters while the Smith County Attorney had stated his intention and

taken all the steps necessary to initiate the prosecution of Malvin Schamp in

district court short of the complaint being actually filed.  Just as "[a]bsolute

immunity cannot be skirted by carving up an act of prosecutorial discretion into

_____

[5]At ¶ 22 of their amended complaint, the plaintiffs allege that "James Fetters filed complaint on January 19, 2005 for the state and was no longer city or county attorney."  (Dk. 8 at p. 8).  At ¶ 66, the plaintiffs allege, "[t]he plaintiffs' case was dismissed with prejudice and was refiled by an Attorney who was not the County Attorney at the time of filing it was put in another jurisdiction."  (Dk. 8 at p. 16). In their response to the defendants' motion, the plaintiffs assert that "[t]he retired County Attorney for Smith County who did in fact file a complaint on the 19th day of January after he was retired . . . ."  (Dk. 33, ¶ 5, p. 3).  Apparently, the plaintiffs' position is that they know and claim the defendant Fetters controlled or directed the actual filing of the complaint on January 19, 2005.

23

different elements and the labeling one or more as purely administrative," so one of those elements should not fall outside of immunity's umbrella because it was accomplished after the prosecutor left office. *See Robinson v. Gillespie*, 2003 WL 21667167, *6 (D. Kan. 2003).  Having conferred immunity to Fetters for his decision to prosecute and his preparation of and signature upon the criminal complaint all accomplished by January 10, 2005, it seems too slender of a reed now to deny immunity Fetters for what amounts to the mere clerical act of having the complaint filed after January 10, 2005.

Assuming the defendant Fetters, as a private attorney, does not enjoy absolute immunity for having controlled or directed the actual filing of the criminal complaint in district court on January 19, 2005, the court finds the plaintiffs have failed to allege any resulting violation of federal constitutional rights.  The plaintiffs do not allege any actionable right to have a particular person control the actual filing of a criminal complaint.  The plaintiffs do not allege that the actual filing of the complaint was done without the consent and direction of the current county attorney.  The plaintiffs do not allege that the defendant James Fetters as a private attorney made and controlled any critical prosecutorial decisions.  *See Erikson v. Pawnee County Bd. of County Com'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001) ("[T]he participation of a privately-retained attorney in a state criminal

24

prosecution does not violate the defendant's right to due process under federal law unless the private attorney effectively controlled critical prosecutorial decisions." (citations omitted)), *cert. denied*, 535 U.S. 971 (2002).   The court finds no cognizable § 1983 claim against the defendant James Fetters.

<u>John Linneman</u>

The plaintiffs' amended complaint alleges this police officer with the City of Smith Center, Kansas, issued a ticket to Malvin Schamp and "perjured himself on the [witness] stand."  (Dk. 8, ¶¶ 17 and 25).  Schamp's conviction on this ticketed offense accompanied by his failure to allege that his conviction has been reversed on direct appeal, expunged by an executive order, or declared invalid in federal or state collateral proceedings precludes a § 1983 claim against Linneman for issuing the ticket.  *See Heck v. Humphrey*, 512 U.S. 477 (1994) (prohibits § 1983 actions if their success would necessarily imply the invalidity of the plaintiff's conviction).  Immunity bars the plaintiffs' claim against the Linneman for alleged perjury during the criminal trial.  *See Briscoe v. LaHue*, 460 U.S. 325 (1983) (police officers have absolute immunity for testimony at trial, even if perjurious); *Hunt v. Bennett*, 17 F.3d at 1268.  The defendant is entitled to dismissal.

**SUPPLEMENTAL JURISDICTION**

25

Though less than clear, the amended complaint may assert some state law claims. This court's subject matter jurisdiction of these state law claims is limited to supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), "[a] district court may decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it had original jurisdiction." *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1138-1139 (10th Cir. 2004). The exercise of supplemental jurisdiction in this situation is discretionary. *Id.* "[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (citations omitted). This case is in the early stage of litigation, and the parties have not invested much time in litigating any state law claims. Having dismissed all of the claims over which this court had original jurisdiction, the court finds that the factors of judicial economy, convenience, fairness and comity do not warrant the exercise of supplemental jurisdiction over the plaintiffs' state law claims. Such claims shall be dismissed without prejudice.

IT IS THEREFORE ORDERED that the defendants' motion judgment on the pleadings (Dk. 24) is granted on the grounds stated above, and the plaintiffs' state law claims are dismissed without prejudice.

Dated this 12th day of October, 2006, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge